UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| KODY ROBERT COREY,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Deputy Commissioner of Social Security for Operations,<br><br>Defendant. | NO. C17-5807-RAJ-JPD<br><br>REPORT AND RECOMMENDATION |

Plaintiff Kody Robert Corey appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") that denied his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court recommends that the Commissioner's decision be AFFIRMED.

I.  FACTS AND PROCEDURAL HISTORY

Plaintiff is a 34-year-old man completed ninth grade, with special education. Administrative Record ("AR") at 60, 424. His past work experience includes employment as an ATM installer, pizza cook, dishwasher, excavating laborer, landscaping laborer, forklift

REPORT AND RECOMMENDATION - 1

operator, and vehicle processor. AR at 437-43. Plaintiff was last gainfully employed in November 2011. AR at 423.

In October 2012, Plaintiff applied for SSI and DIB, alleging an onset date of November 1, 2011. AR at 172-73, 378-91. Plaintiff asserts that he is disabled due to diabetes, degenerative disc disease, and neuropathy. AR at 423.

The Commissioner denied Plaintiff's claims initially and on reconsideration. AR at 231-34, 238-49. Plaintiff requested a hearing, which took place on May 6, 2014. AR at 36-87. On June 13, 2014, the ALJ found Plaintiff not disabled. AR at 202-15. Plaintiff's administrative appeal of the ALJ's decision was granted by the Appeals Council, which vacated the ALJ's decision and remanded this matter for further proceedings. AR at 223-25.

On May 31, 2016, the ALJ held a second hearing. AR at 88-140. On January 30, 2017, the ALJ found Plaintiff not disabled. AR at 18-27. Plaintiff's administrative appeal of the ALJ's decision was denied by the Appeals Council, AR at 1-6, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). On October 10, 2017, Plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. 1, 4.

## II.   JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III.   STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is

REPORT AND RECOMMENDATION - 2

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

## IV.   EVALUATING DISABILITY

As the claimant, Mr. Corey bears the burden of proving that he is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if his impairments are of such severity that he is unable to do his previous work, and cannot, considering his age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at

REPORT AND RECOMMENDATION - 3

any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[1] If he is, disability benefits are denied. If he is not, the Commissioner proceeds to step two. At step two, the claimant must establish that he has one or more medically severe impairments, or combination of impairments, that limit his physical or mental ability to do basic work activities. If the claimant does not have such impairments, he is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether he can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform his past relevant work, he is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g),

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

REPORT AND RECOMMENDATION - 4

416.920(g); *Tackett*, 180 F.3d at 1099, 1100.  If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V.    DECISION BELOW

On January 30, 2017, the ALJ issued a decision finding the following:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.

2. The claimant has not engaged in substantial gainful activity since November 1, 2011 the alleged onset date.

3. The claimant has the following severe impairments: degenerative disc disease; diabetes mellitus; peripheral neuropathy.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can stand and walk 4 hours total in an 8 hour work day and sit for 6 hours total in an 8 hour workday.  All postural activities are limited to occasionally except the claimant can never climb ladders, ropes or scaffolds.  Balancing is unlimited.  With the left upper extremity, non-dominant hand, he is limited to frequent feeling.  The claimant must avoid concent[rated] exposure to extreme cold, vibrations, and hazards (heights, and dangerous moving machinery).  Pushing/pulling with the lower extremity is limited to occasionally.

6. The claimant is unable to perform any past relevant work.

7. The claimant was born on XXXXX, 1984 and was 27 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.[2]

8. The claimant has a limited education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework

---

[2] The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

REPORT AND RECOMMENDATION - 5

supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from November 1, 2011, through the date of this decision.

AR at 20-27 (footnote omitted).

## VI.   ISSUE ON APPEAL

The principal issue on appeal is whether the ALJ erred in finding Plaintiff's gastroparesis/diabetic ketoacidosis to be severe impairments at step two, and in failing to account for limitations caused by those conditions in the RFC assessment. Dkt. 12 at 1.

## VII.   DISCUSSION

At step two, a claimant must make a threshold showing that her medically determinable impairments significantly limit her ability to perform basic work activities. *See Bowen v. Yuckert*, 482 U.S. 137, 145 (1987); 20 C.F.R. §§ 404.1520(c), 416.920(c). "Basic work activities" refers to "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1522(b), 416.922(b). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (quoting Social Security Ruling ("SSR") 85-28, 1985 WL 56856, at *3 (Jan. 1, 1985)). "[T]he step two inquiry is a de minimis screening device to dispose of groundless claims." Id. (citing *Bowen*, 482 U.S. at 153-54). A diagnosis alone is not sufficient to establish a severe impairment: a claimant must show his medically determinable impairments are severe. 20 C.F.R. §§ 404.1521, 416.921. The ALJ must consider the limiting effects of all of a claimant's

impairments, including those that are not severe, in determining the claimant's RFC. *Buck v. Berryhill*, 869 F.3d 1040, 1048-49 (9th Cir. 2017).

At the May 2016 hearing, Plaintiff testified that he vomited nearly every day, and that he continued to smoke marijuana two or three times a week (as he had described at the 2014 hearing).[3] AR at 68-69, 107-08. He stated that his gastroparesis caused nausea and vomiting symptoms that led to dehydration so severe that he visited the emergency department "at least once every two weeks" to receive IV fluids. AR at 109. He testified that his problems had increased since his previous hearing in 2014. AR at 109-10. He did not present any medical opinion evidence regarding the functional limitations caused by his gastroparesis.

The ALJ discussed Plaintiff's allegations of gastroparesis limitations in the step-two discussion, and apparently assumed that the condition was medically determinable, but found that it was not severe because Plaintiff's alleged limitations were inconsistent with or undermined by various parts of the record. Specifically, the ALJ found that Plaintiff's gastroparesis and complaints of related nausea and vomiting resolved with medication and IVs administered in the emergency department. AR at 21. The ALJ also found that the record indicated that Plaintiff did not vomit every day, as he had alleged, based on his reports to providers and his history of emergency department visits. *Id*.

The ALJ cited other certain evidence in the record that she found contradicted Plaintiff's allegations: she noted that after a gastric emptying study was ordered, it took him a year to obtain this study. AR at 21. She also identified a record wherein Plaintiff described his nausea and vomiting as occurring mostly in the evenings, between 7 and 9 p.m., and

---

[3] He testified at the 2014 hearing that he previously smoked marijuana on a daily basis, before he stopped working (in November 2011). AR at 68. However, he reported to a provider in May 2015 that he had been smoking marijuana on a daily basis for the past six years. AR at 1147.

REPORT AND RECOMMENDATION - 7

interpreted this to mean that his symptoms would not conflict with a typical workday. *Id.* Lastly, the ALJ noted that Plaintiff had been advised to stop using marijuana, as it can cause cyclic vomiting, but he nonetheless continued to use. *Id.* For all of these reasons, the ALJ found Plaintiff's gastroparesis to be a non-severe impairment. *Id.*

Some of the ALJ's inferences from the record are not reasonable. Specifically, although the ALJ does cite evidence that Plaintiff's symptoms often resolved with medication and that he did not experience them every day, this evidence does not lead to the conclusion that his condition does not cause any significant limitations on his ability to perform basic work activities. As alleged in Plaintiff's briefing, he required emergency treatment "more than 50 times between October 2013 and July 2016." Dkt. 10 at 8. Symptoms this frequent, which regularly require emergent treatment, would presumably interfere with work attendance. *See, e.g.*, AR at 132-33 (vocational testimony indicating that missing work once every two weeks would preclude work, and that unscheduled breaks that total one day per month would also be work-preclusive).

Furthermore, Plaintiff explained that his gastric emptying study was delayed due to insurance and financial constraints, and the ALJ did not apparently consider the sufficiency of this explanation as she is required to do. *See* AR at 111-12; SSR 16-3p, 2017 WL 5180304, at *9-10 (Oct. 25, 2017). And although Plaintiff did report on one occasion that his symptoms flared in the evenings (AR at 997), his symptoms were well-documented as occurring throughout the day. *See* Dkt. 12 at 5-6 (citing AR at 663, 689, 729, 752, 766, 777, 867, 869, 877, 881, 888, 903, 932, 939, 1012, 1042, 1044, 1066, 1093, 1097, 1102, 1113, 1120, 1133, 1138, 1143, 1153, 1177, 1187, 1193, 1204, 1224, 1268, 1273, 1270).

Nonetheless, substantial evidence in the record does support the ALJ's finding that Plaintiff continued to use marijuana against medical advice. An emergency department

REPORT AND RECOMMENDATION - 8

physician warned Plaintiff for the second time in June 2014 that his vomiting may be exacerbated by his marijuana use and that he should stop.[4] AR at 865, 867. Other emergency providers noted a possible connection between his symptoms and his marijuana use in the months that followed. *See* AR at 942 (December 2014 note), 1045 (January 2015 note), 1077 (March 2015 note), 1154 (October 2015 note). In January 2015, Plaintiff was again instructed to lower his marijuana use because "it can lead to cyclic vomiting episodes." AR at 987. In March 2015 Plaintiff's emergency physician "had an extensive discussion with [him] and his family about marijuana induced hyperemesis and encouraged him to stop using marijuana." AR at 1079. In January 2016, Plaintiff's emergency provider told him that "[t]here is evidence of cyclic vomiting associated with regular use and I strongly encouraged him to stop using marijuana." AR at 1203. Nonetheless, at the administrating hearing in May 2016, Plaintiff testified that he continued to use marijuana. AR at 107-08.

      The ALJ reasonably found that evidence of Plaintiff's failure to follow treatment recommendations undermined Plaintiff's allegations about the extent of his gastroparesis limitations, particularly because Plaintiff offered no explanation as to why he continued to use marijuana against medical advice. *See Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012). Whether Plaintiff was officially diagnosed with cyclic vomiting syndrome or was told that ceasing marijuana use would entirely resolve his symptoms is not directly relevant: Plaintiff was advised on multiple occasions that he should stop using marijuana and did not do so. This evidence a failure to follow medical advice related to exacerbations of Plaintiff's symptoms is a clear and convincing reason to discount Plaintiff's testimony regarding those symptoms.

---

[4] Although Plaintiff's briefing contends that he was first encouraged to stop using marijuana in January 2016 (Dkt. 10 at 8; Dkt. 12 at 8), this contention is inaccurate.

REPORT AND RECOMMENDATION - 9

Because Plaintiff's own testimony is the only evidence regarding the extent of the functional limitations caused by his gastroparesis, and the ALJ provided a clear and convincing reason to discount Plaintiff's testimony as to those limitations, the ALJ did not err in failing to account for these limitations in the RFC assessment. *See Britton v. Colvin*, 787 F.3d 1011, 1013-14 (9th Cir. 2015) (holding that where a claimant is not credible, an ALJ need not account for limitations established only by a claimant's self-report in a VE hypothetical); *Bayliss*, 427 F.3d at 1217-18. Thus, even if Plaintiff is correct that the ALJ erred in finding his gastroparesis to be a severe impairment at step two, any error is harmless because the ALJ considered Plaintiff's allegations and provided a legally sufficient rationale for rejecting his allegations pertaining to the limitations caused by the gastroparesis. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) ("The decision reflects that the ALJ considered any limitations posed by the bursitis at Step 4. As such, any error that the ALJ made in failing to include the bursitis at Step 2 was harmless."). The ALJ resolved step two in Plaintiff's favor, and Plaintiff did not challenge any of the ALJ's reasons for discounting his testimony on appeal. Plaintiff has not met his burden to show that the ALJ's decision contains harmful legal error. *See id.*; *Buck*, 869 F.3d at 1048-49.

## VIII.   CONCLUSION

For the foregoing reasons, the Court recommends that the ALJ's decision be AFFIRMED. A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit by no later than **June 4, 2018**. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motion calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14)** days after service of objections. If

no timely objections are filed, the matter will be ready for consideration by the District Judge on **June 8, 2018**.

This Report and Recommendation is not an appealable order. Thus, a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge acts on this Report and Recommendation.

DATED this 21st day of May, 2018.

JAMES P. DONOHUE
United States Magistrate Judge

REPORT AND RECOMMENDATION - 11